IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHERYL M. ALSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:11-cv-550-CG-M |
| | ) | |
| INFIRMARY HEALTH HOSPITALS, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT**

This matter is before the court on the cross-motions for summary
judgment filed by the plaintiff, Cheryl Alston ("Alston") (Doc. 28) and by the
defendant, Infirmary Health Hospitals, Inc. ("IHH") (Doc. 24).  The parties
have filed briefs and evidentiary materials in support of their respective
positions, and the motion is now ripe for resolution.  After careful
consideration, the court concludes that both parties' motions are due to be
**DENIED**.

I.      FACTUAL BACKGROUND

Alston's cause of action arises under the Fair Labor Standards Act
("FLSA"), 29 U.S.C. §§ 201, et seq.  From February 2006 until her
termination on January 31, 2011, Alston was employed by IHH as a certified
nurse assistant ("CNA") in the Long Term Acute Care Unit ("LTAC") at
Infirmary West hospital in Mobile, Alabama.  (Doc. 28-2 at 1; Doc. 26 at 2;
Doc. 25 at 2).  Alston was a non-exempt employee, meaning that the

minimum wage and overtime provisions of the FLSA applied to her employment at Infirmary West.  (Doc. 28-2 at 1).  During the time period relevant to the case, Alston's regular pay rate was $9.70 per hour, and her overtime rate was $14.55 per hour.  (Doc. 27-1 at 11).

Alston worked a 12-hour night shift from 7:00 p.m. to 7:30 a.m., id. at 2, which included an uncompensated 30-minute break for lunch which was automatically deducted from her recorded time.  (Doc. 28-6 at 9).  She normally worked three shifts per week, although she occasionally worked four shifts per week and accrued eight hours of overtime.  Id. at 7, 9.

Alston's duties in the LTAC unit included feeding, bathing and dressing patients, taking vital signs, stocking and cleaning up rooms, checking bed pans, helping patients move to chairs, and answering call lights.  (Doc. 26 at 3).  Alston testified that there was less activity during the night shift as opposed to the day shift, which was when meals were served, patients were admitted and discharged, half of all patients were bathed, and when patients were taken out of the LTAC unit for tests.  (Doc. 27-1 at 5).

Alston recorded her time at the beginning and end of each shift by swiping her ID badge on a clock mounted to the wall next to the fifth floor employee break room.  (Doc. 27-1 at 3).  Employees did not "clock out" for their 30-minute meal break, which they were free to schedule as desired so long as they advised an RN that they were doing so.  (Doc. 27-13 at 4; Doc. 27-1 at 5).  Alston alleges, and IHH disputes, that for two out of every three

2

shifts, she did not take her 30-minute meal break at all or was too busy being interrupted by calls from patients to take a full 30-minute break.  (Doc. 27-1 at 10).

In the event that an employee forgot to swipe their ID card at the beginning of a shift, or if the employee missed a 30-minute meal break, IHH's policy as stated in its employee handbook was for the employee to correct the resulting inaccuracy in their recorded time.  (Doc. 27-8 at 2).  The LTAC unit utilized a time adjustment form for this purpose, which was kept in a special-purpose book located in a plastic box on the wall behind the LTAC nurses' station.  (Doc. 27-1 at 4).  The deadline for recording a time inaccuracy (such as a missed meal break) in the time adjustment book for the previous week was Monday morning; however, if an employee missed this deadline, he or she could go to the human resources department to report the discrepancy.  Doc. 27-13 at 8; Doc. 27-1 at 8.  Alston testified that she knew what the time adjustment book was and where it was located, id. at 4; that no one ever stopped or discouraged her from recording time adjustments, id. at 12; and that she utilized the time adjustment book on occasion to record inaccuracies, such as when she forgot to clock in or when she was sent home from a shift due to low patient volume.  Id. at 9.  Alston also testified that for a time she used the time adjustment book to record missed meal breaks but believed that IHH simply denied or ignored these entries because she "didn't think" she saw a difference in her paycheck and assumed that she had not been

paid.  (Doc. 28-4 at 10).  Alston admits, however, that she did not check the computerized time summaries that were available to her on IHH's time management computer system.  (Doc. 27-1 at 16).  Accordingly, Alston stopped entering time adjustments into the LTAC time adjustment book, and did not discuss the issue with her supervisor allegedly for fear of losing her job.  (Doc. 28-4 at 10).

Alston's employment at IHH was terminated on January 31, 2011, for poor performance.  (Doc. 25 at 2).  She now claims that IHH violated the relevant portions of the FLSA by not compensating her for hours where she worked through her 30-minute meal break, including overtime hours.  (Doc. 28-2 at 4).  Alston further alleges that IHH knew that she was working through her breaks without compensation but nevertheless failed to pay her, and that "IHH failed to inform [her] that she had a right to be paid for missed and interrupted meal breaks, and that such payments could not be withheld at IHH's discretion."  Id. at 5.  Alston also claims that IHH breached "express and implied contracts of employment," for which she claims she is entitled to receive compensation.

## II.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  The trial court's function is not "to weigh the evidence and determine

the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" <u>Bailey v. Allgas, Inc.,</u> 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting <u>Anderson,</u> 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson,</u> 477 U.S. at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See <u>Anderson,</u> 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. <u>O'Ferrell v. United States,</u> 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. <u>Burton v. City of Belle Glade,</u> 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds might differ on the inferences arising from undisputed facts, then a court should deny summary judgment." <u>Hinesville Bank v. Pony Exp. Courier Corp.,</u> 868 F.2d

1532, 1535 (11th Cir. 1989) (citing <u>Mercantile Bank & Trust v. Fidelity & Deposit Co.,</u> 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(a), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." <u>Howard v. BP Oil Co.,</u> 32 F.3d 520, 524 (11th Cir. 1994)(citing <u>Celotex Corp. v. Catrett,</u> 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." <u>Clark v. Coats & Clark,</u> Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." <u>Vega v. Invsco Group, Ltd.,</u> 2011 WL 2533755, *2 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker v. Darby,</u> 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." <u>Tipton v. Bergrohr GMBH-Siegen,</u> 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine

issue for trial." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475

U.S. 574, 587 (1986) (internal quotation and citation omitted).

## III.   LEGAL STANDARD

Congress enacted the FLSA in 1938 with the goal of providing

minimum wage and maximum hour protections for workers.  <u>Allen v. Board</u>

<u>of Public Education for Bibb County</u>, 495 F.3d 1306 (11th Cir. 2007) (<u>quoting</u>

<u>Moreau v. Klevenhagen</u>, 508 U.S. 22, 25 (1993)).  The FLSA requires

employers to pay overtime to an employee "for his employment in excess of"

forty hours per week.  29 U.S.C. §207(a)(1).  The term "employ" is defined as

"to suffer or permit to work."  <u>Id.</u> at § 203(g).  The implementing regulations

to the FLSA caution that "[w]ork not requested but suffered or permitted is

work time."  29 C.F.R § 785.11.  "The reason an employee continues to work

is immaterial … if the employer knows or has reason to believe that the

employee continues to work, the additional hours must be counted."  <u>Reich v.</u>

<u>Department of Conservation and Natural Resources</u>, 28 F.3d 1076, 1082

(11th Cir. 1994).

"[A]n employer's knowledge is measured in accordance with his 'duty to

inquire into the conditions prevailing in his business.' "  <u>Gulf King Shrimp</u>

<u>Co. v. Wirtz</u>, 407 F.2d 508, 512 (5th Cir. 1969) (<u>quoting</u> <u>People ex rel. Price v.</u>

<u>Sheffield Farms-Slawson-Decker Co.</u>, 121 N.E. 474, 476 (1918)).  In reviewing

the extent of an employer's awareness, a court "need only inquire whether the

<u>circumstances</u> … were such that the employer either had knowledge [of

overtime hours worked] or else had the opportunity through reasonable diligence to acquire knowledge." Id. (quoting People ex rel. Price, 121 N.E. at 476)(additional quotation marks omitted).

Therefore, in order for Alston to prevail on her claim, she must show that (1) she worked hours, including overtime hours, without compensation, and (2) that IHH knew, or should have known, of her uncompensated work. See Gaylord v. Miami-Dade County, 78 F.Supp.2d 1320, 1325 (S.D. Fla. 1999) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)) (other citations and quotations omitted).

## IV.   LEGAL ANALYSIS

### A.   Alston's Motion For Summary Judgment

#### 1.   Allegations of Uncompensated Work

As summarized, supra, Alston alleges that she routinely worked through her unpaid meal break, or had her meal break interrupted by patients' calls, thus accruing hours where she worked without compensation, including overtime compensation.  (Doc. 28-2 at 4).  Alston further alleges that "IHH failed to inform [her] that she had a right to be paid for missed and interrupted meal breaks, and that such payments could not be withheld at IHH's discretion." Id. at 5.

Alston conceded at her deposition that she has no documentary evidence to support her claims.  (Doc. 27-1 at 14).  Despite this concession, plaintiff's counsel nevertheless argues in Alston's partial summary judgment

brief that "[t]he payroll records produced by IHH conclusively show that Alston was never reimbursed for a missed meal break, despite Alston's testimony that she did make written requests for reimbursement during the time period at issue here."  (Doc. 41 at 12).  But this statement is devoid of any citation to the record and devoid of any further explanation or context which would tell the court how the payroll records prove that Alston was not compensated for missed meal breaks.  As the court sees it, the payroll records produced by IHH ("defendant's exhibit 2") (Docs. 27-3 and 28-5) do not conclusively show anything other than the fact that Alston was paid varying amounts for the weeks documented in the records.

Thus, for evidentiary support, Alston is left with her own deposition testimony (Doc. 27-1), her own affidavit (Doc. 28-3), and the affidavit of a former IHH registered nurse ("RN"), Cheryl Lewis (Doc. 28-7), all of which Alston asserts to be "substantial evidence that Alston worked time for which she was not compensated."  (Doc. 28-2 at 9).  To the contrary, however, the court finds that this evidence does not foreclose a genuine dispute of material fact on the question of whether she worked without compensation.[1]

---

[1] Alston attempts to side-step her evidentiary burden of establishing a genuine dispute of material fact on the question of whether she worked uncompensated hours by citing the Supreme Court's burden-shifting analysis articulated in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).  (Doc. 41 at 9).  However, Anderson addressed an FLSA plaintiff's evidentiary burden at trial, rather than at summary judgment.  328 U.S. at 687-88.  Secondly, "[t]he holding of Anderson addresses the degree of certainty with which an FLSA plaintiff must prove his damages.  It does not alter an FLSA plaintiff's burden to demonstrate by a preponderance of the evidence that the defendant violated the terms of the FLSA with regards to the plaintiff's employment."  Debose v. Broward Health, 2009 WL

Turning to the weaknesses in Alston's evidence, the court finds that Alston's testimony and Lewis's affidavit conflict on two separate points. Lewis stated that she never saw Alston take an uninterrupted meal break. (Doc. 28-7 at 2, ¶7).  Alston, on the other hand, stated that she was able to take a full meal break on one out of the three shifts she worked each week. [2] (Doc. 27-1 at 16).  Also, Lewis stated that "IHH did not have a procedure for recapturing time lost in interrupted meal breaks."  (Doc. 28-7 at 2, ¶ 9). However Alston repeatedly acknowledged the opposite, testifying at length about the various time adjustment forms used to report missed meals.  (Doc. 27-1 at 4,7, and 13).  Alston's affidavit also states unequivocally that "IHH had a procedure for reclaiming the 30-minute meal break time when I did not actually take a meal break."  (Doc. 28-3 at 2).

Casting further doubt upon Lewis' affidavit is her statement that she was Alston's supervising nurse when the two women worked together and that Lewis "knew [Alston] was not getting compensated for working through meal breaks."  (Doc. 28-3 at 2, ¶7).  Lewis does not explain how she knew

---

4884535, *12 (S.D. Fla. 2009).  After reviewing Alston's anemic evidentiary showing at the summary judgment stage, the court observes that she will likely fail to satisfy the preponderance of the evidence standard discussed in <u>Anderson</u> if her evidence is not substantially enhanced by stronger facts at trial.

[2] Theoretically, it is possible that every single one of Alston's uninterrupted meal breaks could have occurred on shifts when she did not work with Lewis, thus bringing her and Lewis's statements out of conflict.  However, insofar as Lewis bases her affidavit upon her personal knowledge of the facts at issue in this case, her declaration that "I never saw [Alston] have an uninterrupted meal break" is noted as being inconsistent with Alston's testimony.  Furthermore, the court is not inclined to credit this question of fact in Alston's favor because she is the party seeking partial summary judgment and the court must resolve this issue in favor of the non-movant.

this, other than her general averment that she had personal knowledge of the facts of the instant case.  Id. at 1, ¶2.  Although Alston testified that she told Lewis about missed meal breaks, Doc. 27-1 at 17, Alston did not testify that she told Lewis about her compensation, and specifically denied telling any of her "supervisors" about not being compensated:

> Q: Prior to when your lawyer filed the lawsuit in this case, did you ever complain to anybody at the Infirmary about missing meals and not getting paid for it?
>
> A: No. Not supervisors, no.

Id. at 12.

The trouble is not limited to Lewis' affidavit -- Alston's deposition testimony is self-contradictory at points.  For example, Alston testified that the LTAC hallway where she worked was staffed by "two RNs and two CNAs usually."  (Doc. 27-1 at 3).  Yet later in the same deposition, Alston stated that her hallway was staffed by one RN and one CNA, and that she was the only CNA on the hall.  Id. at 15, 16.  Also, while Alston stated that she "didn't see a difference in [her] pay" after submitting forms to report her missed meal breaks, she also admitted that the fluctuating amounts of her paycheck each pay period could have reflected compensation for those missed meal breaks, and admitted that she didn't know whether her missed meal breaks were recorded in her pay stub or not:

> Q:  … Isn't it true that your pay period – your paycheck was not the same from week to week?

> A:  It varied.
>
> Q:  … So you don't know whether or not [any missed lunch breaks] were recorded in the pay stub?
>
> A:  No, I don't know.

Id. at 11.

> Q:  Let's just go through week by week, and you tell me what amount you made every week? … Every week there's a difference, isn't there?
>
> A:  It could have been me clocking out later.
>
> Q:  It could have been because you got a meal break, couldn't it?
>
> A:  It could.

Id. at 21.  Alston also admitted that she used the time adjustment logbook to record other human resources issues and subsequently got paid, such as when IHH sent her home on occasion due to low patient volume.  Id. at 8-9. ("I always wrote it down.").

Alston's performance evaluations also conflict with her and Lewis's testimony.  The performance evaluations note that some co-workers reported Alston "sit[ing] in the dictation area after [taking] vital signs instead of being visible and making rounds," Doc. 27-5 at 2, and "sitting for long periods of time in the middle of [her] shift."  Docs. 27-6 at 4 and 27-7 at 4.  The evaluations also reference Alston's "free time," and advised that she should

use it to "benefit the unit." Id. at 3.  While Alston dismisses the evaluations
as "an attack on [her] job performance," and "irrelevant to whether [she]
incurred unpaid overtime," Doc. 41 at 3-4, this argument misses the point.
The probative value of the performance evaluations is not whether Alston
was a good or a bad nursing assistant.  Rather, their probative value lies in
the contemporaneous account of Alston as having "free time" on her shift and
"sitting for long periods," which contradicts her allegations of being so busy
that she did not have time to take a thirty-minute meal break two-thirds of
the time.

Furthermore, Alston's and Lewis's testimony are contradicted by the
affidavits of RNs Michael Smith and David Thompson (Docs. 33-1 and 33-2),
who state that (1) they each worked with Alston on occasion; (2) the 7:00 p.m.
to 7:00 a.m. shift normally was not particularly busy; (3) neither Smith nor
Thompson recalls Alston ever missing a meal break, nor do they recall
missing a meal break themselves; and (4) both Smith and Thompson recall
that Alston "spent a lot of time sitting at the nurse's station," with Thompson
recalling that Alston was "often doing puzzles or other personal business."
Id. at 2.

Alston counters that Smith and Thompson's testimony is not
inconsistent with hers because they do not specify how often they worked
with Alston, the idea being presumably that they worked with her
infrequently enough that they never saw her on a busy shift.  (Doc. 41 at 2).

She also attempts to minimize the impact of their testimony by arguing that "[Smith and Thompson] merely say that they don't remember her missing her meal breaks." (Doc. 41 at 2). Alston also glibly speculates that "perhaps [Smith and Thompson] were too busy taking their own meal breaks to notice whether Alston was taking hers." Id.

Each of these arguments is unconvincing. The crux of Alston's complaint is that she missed her meal breaks on two of every three shifts throughout her employment at IHH. So, for Smith and Thompson's affidavit testimony to be *consistent* with Alston's claim (as she asserts), Smith and Thompson would have to have worked with her exclusively on the one shift each week where she was not busy and was able to take her meal break. Alternatively, Alston urges the court to assume that Smith and Thompson merely forgot every instance where Allston was too busy to stop for her meal break, which she claims to have happened 66% of the time. The court declines to credit this implausible theory where, as here, Alston is the summary judgment movant and questions of fact must be resolved in favor of the non-movant, IHH.

Furthermore, the fact that Smith and Thompson do not recall Alston missing a meal break certainly undercuts her claim that she informed both Smith and Thompson and other RNs that she was missing her meal breaks, a claim which she stated repeatedly throughout her briefs and in her deposition testimony. See Doc. 27-1 at 18 ("If I worked with David, I would tell him. If I

14

worked with Mike, him…")[3]; Doc. 28-2 at 4 ("The RNs who were Alston's immediate supervisors knew that Alston was working through her meal breaks."); id. ("The RNs also witnessed her working through her meal breaks.").  Finally, the court notes that the Smith and Thompson affidavits also contradict Alston's and Lewis's testimony that the LTAC unit was chronically understaffed and that Alston was chronically overworked.

Given the thin and contradictory nature of the evidentiary record, the court finds that Alston has failed to foreclose the existence of a genuine dispute of material fact regarding whether she worked through her meal breaks without compensation.

### 2.    IHH's Actual or Constructive Knowledge

Because Alston cannot sustain her summary judgment burden on the question of whether she actually worked uncompensated hours, it follows as a matter of logic that she cannot sustain her burden on the question of notice.  Accordingly, the court finds that Alston's motion for partial summary judgment is due to be **DENIED**.

### B.    IHH'S MOTION FOR SUMMARY JUDGMENT

### (1) Allegations of Uncompensated Work

As stated above, Alston's evidentiary support for her claims is limited to her own deposition testimony (Doc. 27-1), her own affidavit (Doc. 28-3), and the affidavit of a former IHH nurse, Cheryl Lewis (Doc. 28-7).  In denying

---

[3] Alston cites to this portion of her deposition herself in her partial summary judgment brief.  See Doc. 28-2 at 4, ¶2.

Alston's motion for partial summary judgment, the court found that this evidence failed to <u>foreclose</u> the existence of a genuine issue of material fact on the question of whether summary judgment for Alston was appropriate. Now, the court must determine whether this same evidence is sufficient to <u>establish</u> the existence of a genuine issue of material fact on the question of whether summary judgment for IHH is inappropriate.

In its discussion of Alston's motion, <u>supra</u>, the court noted numerous inconsistencies and contradictions between and within Alston's deposition testimony and Lewis' affidavit testimony.  In a similar vein, IHH argues that the court should disregard Lewis' affidavit as lacking a proper evidentiary foundation because she does not explain the basis of her knowledge that Alston was allegedly not being paid for her missed meal breaks.  (Doc. 39 at 11).  IHH points out that Lewis "was not employed in a position at IHH from which she would have gained any independent knowledge of such compensation." <u>Id.</u>  An affidavit is inadmissible if a witness could not have actually perceived or observed that to which they testify.  <u>Great American Ins. Co. v. Moye</u>, 2010 WL 2889665, *2 (M.D. Fla. 2010).  Here, though, IHH's argument does not negate the possibility that Lewis could have "perceived or observed" facts regarding Alston's compensation, for Alston stated at her deposition that she complained to coworkers that she was not being paid for missed meal breaks, (Doc. 27-1 at 13).  Now that the tables are turned and Alston is the non-moving party, the court must resolve questions of fact in

her favor and therefore finds that the question of whether Lewis was one of the "coworkers" Alston confided in is just such a question of fact.

Thus, the problems inherent in Lewis' affidavit go more to the issue of credibility than admissibility.  This is especially true given that IHH failed to cite any authority which would support striking Lewis' affidavit as hearsay. Despite finding Lewis' affidavit admissible, the court is nonetheless highly skeptical of her credibility, especially in light of the affidavit testimony of RNs Michael Smith and David Thompson, discussed <u>supra</u>, who state the opposite of what Lewis asserts, <u>see</u> Docs. 33-1 and 33-2, and in light of the daily time and attendance reports which reflect recorded meal breaks for Alston's coworkers, but none for her.  <u>See</u> Doc. 25-1.  However, "at the summary judgment stage the judge's function is not [her]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).

Accordingly, the court finds that, by the thinnest of margins, there is a genuine dispute of material fact with regard to whether Alston went uncompensated for time that she allegedly worked while an IHH employee.

## (2) Actual or Constructive Knowledge By IHH

Next, IHH argues that any claims of knowledge on its part are foreclosed by Alston's failure to make "suitable notations in the mealtime logbook provided her by IHH for the express purpose" of recording missed

meal breaks.  (Doc. 26 at 10-11).  Citing a string of cases, IHH argues that "[t]here is no violation of the FLSA where the employee performs uncompensated work but deliberately prevents his or her employer from learning of it." Allen v. Board of Public Education of Bibb County, 495 F.3d 1306, 1319 (11th Cir. 2007) (additional citations omitted).  However, in Allen, the Eleventh Circuit upheld the district court's grant of summary judgment only against those plaintiffs who testified at deposition that they had not informed their supervisors of their overtime work.  Id. at 1319-22.  In the instant case, Alston claims the opposite, arguing that Lewis was her supervisor and knew of her allegedly unpaid work.

Thus, the impact of Allen on IHH's summary judgment motion depends on whether or not Lewis can properly be considered Alston's "supervisor."  The same holds true for the other cases cited by IHH: Brumbelow v. Quality Mills, Inc., 462 F.2d 1324, 1327 (5th Cir. 1972) ("There is … no evidence that [the employer] knew or should have known that appellant … was giving false information to conceal [her uncompensated hours].");  Gaylord v. Miami-Dade County, 78 F.Supp.2d 1320, 1325 (S.D. Fla. 1999) ("If an employer knows or has reason to believe that the employee continues to work, hours will count for the purpose of overtime under the FLSA.") (quotations omitted); and Debose, supra, at *12 ("...supervisors had no way of knowing when an employee skipped a meal break without

recording it or otherwise notifying someone.").[4]  Not surprisingly, the parties
dispute Lewis' supervisory status.

Alston claims that Lewis' status as her supervisor is "undisputed," and
points to the deposition testimony of Vanessa Lunceford, who oversaw
hospital operations during the night shift.  (Doc. 28-6 at 3).  Lunceford
testified that, generally, an RN would be a CNA's immediate supervisor.
(Doc. 27-13).  Lunceford also testified that although she was the house
supervisor, she "didn't individually supervise anybody" and that a "charge
nurse" would supervise the nurses and CNAs on a given floor.  (Doc. 28-6 at
3).

IHH, on the other hand, argues that "Lewis could not possibly have
been [Alston's] actual supervisor" because during her employment with IHH,
she entered into a "Voluntary Disciplinary Alternative Program Agreement"
("Voluntary Agreement") with the Alabama Board of Nursing which
prohibited her from acting as a supervisory nurse or charge nurse.[5]  (Doc. 39

---

[4] The court notes that the Southern District of Florida's opinions in Gaylord and
Debose constituted findings of fact and conclusions of law after bench trials.  See
Gaylord and Debose, supra.  Thus, the plaintiff in that case bore the burden of
proving his case by a preponderance of the evidence.  Id.  Here, by contrast, IHH
seeks summary judgment on Alston's claims, and the burden is on IHH to show the
lack of a genuine dispute of material fact.

[5] IHH cited testimony about the Voluntary Agreement in a witness affidavit, but did
not attach a copy of it as an exhibit.  Alston argues that such testimony about the
Voluntary Agreement is inadmissible hearsay.  While Alston's objection is noted, the
court disagrees with her conclusion.  Fed.R.Civ.P. 56(c)(2) states that "[a] party may
object that the material cited to support or dispute a fact cannot be presented in a
form that would be admissible in evidence." (emphasis added).  Because the
agreement discussed is with the state board of nursing, and is therefore a public
record, the court finds that it is capable of being presented in admissible form.  See
Jones v. UPS Ground Freight, 683 F.3d 1283, 1293-94 (11th Cir.2012)("The general

at 10).  Nevertheless, IHH concedes that "as the licensed Registered Nurse assigned to a patient, Lewis may have had some instruction capabilities with respect to Alston, an unlicensed patient care assistant, with respect to Alston's provision of care to the patient."  (Doc. 39 at 11).

The court finds that Lunceford's concession that RNs act as immediate supervisors to CNAs is probative evidence that Lewis was Alston's supervisor for FLSA purposes.  It does so only in the absence of any legal argument from IHH as to the definition of "supervisor," and in the absence of any attempt to explain how or why Lewis' job duties fell outside the scope of this term. Instead, IHH attacked the admissibility of Lewis' affidavit and emphasized her agreement with the state board of nursing.  See, e.g., Doc. 39 at 10-11. But even if Lewis was legally prohibited from acting as a charge nurse, such a fact does not foreclose the possibility that Lewis nonetheless satisfied the legal definition of "supervisor" for labor law purposes. Although the FLSA does not define "supervisor," courts may look to other federal labor statutes to define the term -- in particular, the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(11).  Patel v. Quality Inn South, 846 F.2d 700, 703 (11th Cir. 1988) ("Congress enacted both the FLSA and the NLRA as part of the social legislation of the 1930s. The two acts have similar objectives. More importantly … courts frequently look to decisions under the NLRA when

---

rule is that inadmissible hearsay cannot be considered on a motion for summary judgment. Nevertheless, a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form.")(quoting Macuba v. Deboer, 193 F.3d 1316, 1322, 1323 (1999)(internal quotations and citation omitted).

defining the FLSA's coverage."). The NLRA defines the term "supervisor" as "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." N.L.R.B. v. Kentucky River Community Care, Inc., 532 U.S. 706, 710 (2001). With no argument or showing from IHH regarding whether Lewis meets this definition, the court must construe the ambiguity in favor of Alston as the non-moving party.

Accordingly, IHH's motion for judgment as to Alston's FLSA claims is due to be **DENIED**.

### (3) State Law Claims

The court finds that Alston's state law breach of contract claim, in which she incorporates all of the preceding factual allegations of the FLSA claim, satisfies the Supreme Court's requirement that a complaint contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Fed.R.Civ.P. 8(a)(2) requires that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." By incorporating the facts alleged as part of her FLSA claim into her state law claim, Alston put IHH on notice that she was alleging: (1) the existence of an implied or express employment

21

agreement between herself and IHH, given that she worked there from 2006 to early 2011; (2) performance on her part in the form of allegedly working through meal breaks; (3) breach on IHH's part by allegedly not paying her for missed meal breaks; and (4) damage in the form of lost wages.  Although plaintiff's counsel certainly applied a low standard of legal draftsmanship, the court nevertheless declines to grant IHH's motion for summary judgment on Alston's state law breach of contract claim after finding above that a genuine dispute of material fact exists regarding the pertinent allegations at issue in this case.

Accordingly, IHH's motion for summary judgment as to Alston's state law breach of contract claim is due to be **DENIED**.

## V.   CONCLUSION

For the reasons enumerated above, the parties' respective motions for summary judgment are hereby **DENIED**.

**DONE** and **ORDERED** this 18th day of October 2012.

/s/ Callie V.S. Granade
**UNITED STATES DISTRICT JUDGE**